**CURRY MOTOR FREIGHT LINES, INC., Appellant,**

v.

**SHELL OIL COMPANY, Appellee.**

**No. 8331.**

Court of Civil Appeals of Texas, Amarillo.

July 16, 1973.

Rehearing Denied Aug. 13, 1973.

Hugh L. Umphres, Jr., Grady L. Fox, Amarillo, for appellant.

Richard L. Hughston, H. G. Bissnonet, and F. H. Warner, Midland, for appellee.

JOY, Justice.

This is a suit brought by Shell Oil Company against Curry Motor Freight Lines, Inc. and DynMac Corporation, alleging damages to two motors during interstate shipment by public motor carriers. Summary judgment was granted in favor of plaintiff Shell Oil Company, hence this appeal by defendant Curry Motor Freight Lines, Inc. Affirmed.

Four large electric motors manufactured by Westinghouse Electric Corporation were purchased through DynMac Corporation (DynMac hereinafter) by Shell Oil Company (Shell hereinafter) and were shipped from Pennsylvania to Denver City, Texas with Robertson Truck Lines, Inc., the initial carrier, and Curry Motor Freight Lines, Inc. (Curry hereinafter), the final and delivering carrier.

The two motors suffering damages during shipment were caused to be repaired by Shell at Westinghouse's shop in Fort Worth, Texas. A claim was then filed by Shell with Curry, which was rejected and Shell brought this action.

**806**

■ Curry asserts error in the granting of the summary judgment contending that the trial court had no jurisdiction in the case. For this contention, Curry points out that 49 U.S.C.A. § 20(11) limits the delivering carrier's liability to a carrier that operates a line of railroad through or into the state in which the suit is brought. Curry admits that at the time of the enactment of § 20(11), motor transportation was not covered under the Interstate Commerce Act. By congressional action in 1935, § 20(11) and (12) were made applicable to motor carriers by specific provision in § 319 of Part II of the Interstate Commerce Act. Section 20(11) provides, inter alia, for liability of a delivering carrier for damages sustained by property in transit, with § 20(12) providing for recovery by the delivering carrier against other connecting carriers or the initial carrier that might have caused the damages. Curry has not favored us with any case authority interpreting the statutes in the manner urged here. We are not inclined to ascribe to Congress' action such an intendment. We do not feel it necessary to indulge in an extensive analysis of the Congressional amendments to the Interstate Commerce Act or the historical provision thereof. We are of the opinion that Congress intended to grant jurisdiction of suits against delivering motor carriers in those states wherein the carriers operate in interstate commerce, with the knowledge that many motor carriers do not operate "lines of railroad" at all, much less in each state within which the motor carriers operate upon the highways. This interpretation places motor carriers on a more equal basis with other common carriers in accord with the general intent and purpose of the Interstate Commerce Act.

Appellant next contends that appellee has not met its summary judgment burden of proving the absence of any genuine issue of fact. We do not agree. The summary judgment proof consisted of admissions and interrogatories of Westinghouse, the manufacturer and shipper of the motors, and DynMac, the seller of the motors.

Although Curry was served with the request for admissions under Rule 169, Texas Rules of Civil Procedure, no answers were filed within the time prescribed by law, and the answers were taken as admitted against the appellant Curry. All facts necessary to establish liability and damages against Curry having been established, there remained no material issue of fact and summary judgment in favor of Shell was correct. Curry urges upon us in its brief that a defense to liability was not negated, i. e., that the damages were not caused by (1) an act of God, (2) the public enemy, (3) the fault of the shipper, or (4) the inherent nature of the goods themselves. The affidavits, admissions and interrogatories clearly reflect that the damages were not the fault of the shipper, nor a result of the inherent nature of the goods themselves. Insofar as an act of God or a (the) public enemy as a cause of the damages, Curry failed to plead either as a defense, or to establish in any manner, whether by affidavits or otherwise, facts that such defenses could be relied upon as stated in 14 Am.Jur.2d Carriers § 613, p. 129:

> "If the carrier seeks to bring the loss or injury of property during the course of transportation within one of the recognized exceptions to the common-law rule of liability, the carrier has the duty of pleading the facts on which the exception is based, and, it has been held, must bring itself entirely and perfectly within such exception by negativing all contributing fault on its part."

■ Curry next contends that Shell was not shown by the record to be a party entitled to sue for or recover for the freight damage. The straight non-negotiable bill of lading named Shell Oil Corporation as consignee, when, in fact, the consignee was Shell Oil Company. The interrogatories reflect that this was merely a typographical error and, therefore, was not subject to the complaint lodged by Curry.

Finding no reversible error, the judgment of the trial court is affirmed.